# JACOB ARONAUER, ESQ.
## Law Offices of Jacob Aronauer
225 Broadway, 3rd Floor
New York, New York 10007
(212) 323-6980
jaronauer@aronauerlaw.com

September 5, 2018

**Via ECF**
Honorable Kenneth M. Karas
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

      Re:   *Tapia v. Mount Kisco Bagel Company Inc. et al.*
            18-cv-02864-KMK

Dear Judge Karas:

Plaintiff Alberto Tapia ("Tapia" or "Plaintiff") and Defendants Mount Kisco Bagel Company, Inc. ("Mount Kisco Bagel") and James Fleming ("Fleming") (collectively "Defendants") request that Your Honor approve the settlement reached in this matter. A copy of the proposed settlement agreement is annexed hereto as Exhibit A.

## Overview

Mount Kisco Bagel is a bagel shop located in Mount Kisco, NY. James Fleming is the owner of Mount Kisco Bagel. Mount Kisco Bagel sells bagels and other deli goods. From April 2004 through December 2017, Plaintiff was employed by Defendants at Mount Kisco Bagel. Plaintiff was employed primarily as a baker.

There are factual disputes between the parties as to how many overtime hours Plaintiff worked and whether or not Plaintiff was paid correctly for his overtime hours worked. Plaintiff has asserted that he worked an average of 32 overtime hours per week every week in 2012, 2013, 2014, and 2015, and that he was paid only at straight time for his overtime hours worked. Defendants, however, argue that Plaintiff worked fewer overtime hours per week, and that he was paid correctly for all overtime hours worked.

Plaintiff believes he could recover approximately $90,000 if successful at trial. This amount includes unpaid overtime wages, liquidated damages for overtime wages owed, pre-judgment interest and notice violations.

## History of Lawsuit

On March 30, 2018, Plaintiff commenced this action against Defendants. Plaintiff sued for unpaid overtime under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as failure to provide annual wage notices and wage statements under the NYLL. (ECF No. 1.)

Following the commencement of this action, the parties engaged in settlement discussions. This included a meeting of the parties at Defense counsel's office to discuss a resolution of the action. While that meeting did not lead to an immediate settlement, it set a good tone and the parties continued to negotiate in good faith, even as Plaintiff's filed an Amended Complaint (ECF No. 10).

Defendants filed an Answer to Plaintiff's Amended Complaint on July 13, 2018, denying Plaintiff's allegations of wrongdoing and any and all liability. (ECF No. 15.) Plaintiff's counsel then requested a pre-motion conference regarding Plaintiff's motion for conditional certification on July 24, 2018 (ECF No. 17), which Defendants opposed on August 13, 2018 (ECF No. 22). Shortly, thereafter, the parties reached a settlement in principle and requested a stay of the proceedings to finalize a settlement agreement. (ECF No. 23.)

## Fairness and Reasonableness of the Settlement

The settlement sum is $65,000, payable in monthly installments ($10,000 initially, followed by twenty-two subsequent payments of $2,500 per month). The settlement agreement provides that the settlement amount will be allocated as follows: Plaintiff will receive $45,333.33 and counsel will receive $19,666.67 (inclusive of fees and expenses). Plaintiff's counsel's expenses included the cost of service on Defendants that was $150. Plaintiff covered the cost of the filing fee.

Thus, Plaintiff's counsel will receive 30.26% of the total settlement amount, as opposed to the traditional 33 and 1/3%. We respectfully submit the allocation of 30.26% for Plaintiff's counsel should be approved. *Vidal v. Eager Corp.*, No. 16-cv-00979, 2018 WL 1320659, at *2 (E.D.N.Y. March 13, 2018); *see also, Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (approving district court's determination that 30% fee application was reasonable); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp.2d 164, 179 (E.D.N.Y. June 25, 2012) (awarding fees in the amount of one-third of the total settlement); *Reyes v. Buddha-Bar NYC*, No. 08-cv-02494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (awarding fees in the amount of 33% of the total settlement).

Under *Cheeks* and its progeny, a court should consider the totality of the circumstances, including but not limited to the below factors, in determining whether a proposed settlement is fair and reasonable:

(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and

2

expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion.

*Beckert v. Ronirubinov*, No. 15-cv-01951, 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015) (quoting *Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In this case, as a preliminary matter, the "agreement is the product of arm's length bargaining between experienced counsel" and involves no "possibility of fraud or collusion." *Id.* As for the range of recovery, Plaintiff will receive all of his claimed unpaid overtime and some of his liquidated damages if his unpaid overtime were calculated at 32 hours of unpaid overtime owed per week, assuming that he was paid straight time. Since Defendants argue that Plaintiff worked fewer than 32 hours of overtime per week, Plaintiff could have recovered significantly less following a trial than he will receive under the settlement. In contrast, if a jury determined that Plaintiff was owed overtime for all of his reported overtime hours worked, Plaintiff's recovery could have been higher than the settlement amount. Thus, this settlement is a reasonable compromise.

The settlement is further fair because there was a strong disagreement between the parties as to Plaintiff's schedule. This dispute stems from the fact that for the last two years of his employment Plaintiff was not required to clock in and clock out each day. Therefore, it would be an open debate as to the hours that Plaintiff worked. Even during the time period that Plaintiff did clock in and clock out, Plaintiff allegedly took a lengthy mid morning break that included him returning home and taking a nap. Obviously, this type of break could hurt Plaintiff's credibility and overall would decrease the amount of overtime he claims to have worked. Defendants also assert that they did not act willfully and therefore Plaintiff would have difficulty collecting liquidated damages. Finally, throughout Plaintiff's employment, Defendants partook in numerous benevolent acts toward Plaintiff that would potentially warrant sympathy from a jury.

This settlement enables the parties to "avoid both the anticipated burdens and expenses in establishing their respective claims and defenses." *Id.* Since the commencement of this lawsuit, Plaintiff has been unable to find new employment. Further litigation, which would include deposition preparation, depositions, and trial, would require Plaintiff to miss valuable time that he is spending searching for a new position. Plaintiff is eager to be made whole, which he will achieve through this settlement. Furthermore, this settlement will spare Defendants additional legal fees and expenses, prevent the further accrual of Plaintiff's attorneys' fees, and relieve Defendants of the burden of further defending a federal court action.

Both sides faced litigation risks by continuing this litigation. Plaintiff possesses limited proof of the hours he worked. Although Plaintiff's testimony is sufficient, the fact finder is not bound by that recollection and could find that Plaintiff worked fewer hours than he alleges. *See Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005) ("Because defendants here did not produce admissible records of the

hours plaintiff worked, plaintiff must produce sufficient evidence to show the hours he worked as a matter of just and reasonable inference. Furthermore, it is possible for plaintiff to meet this burden by relying on his recollection alone. . .") (internal quotations and citations omitted). By litigating this matter at trial, Defendants risked that a jury would award Plaintiff's overtime pay for the entirety of his reported overtime hours worked, as well as liquidated damages, damages under Sections 195(1) and 195(3) of the NYLL, substantial attorneys' fees, and prejudgment interest. Furthermore, even with a favorable outcome at trial, Plaintiff would still be faced with the possibility of an empty judgment. The agreed upon settlement allows each side to avoid these risks while also making Plaintiff whole.

Finally, the payment schedule was included in settlement agreement due to Plaintiff's concerns over the ability to collect payment from Defendants, as Defendants have informed Plaintiffs that they cannot withstand a $65,000 lump sum payment. The inclusion of the payment schedule also weighs in favor of approving the settlement. *See, e.g.*, *Rivera v. Relay Delivery, Inc.*, No. 17-cv-05012, 2018 WL 1989618, at *1 (S.D.N.Y. Apr. 26, 2018) ("Moreover, plaintiffs in this case have expressed serious concerns about collectability and have agreed to a payment schedule, which 'militates in favor of finding a settlement reasonable.'") (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013); citing *Hart v. RCI Hosp. Holdings, Inc.*, 09-cv-03043, 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of settlement agreement)); *Isidro v. Ala Turk, Inc.*, No. 17-cv-05943, 2018 U.S. Dist. LEXIS 90224, at *1-2 (S.D.N.Y. May 29, 2018) (same); *Zona v. Canandaigua Pub, Inc.*, No. 15-cv-06213, 2016 U.S. Dist. LEXIS 98173, at *4 (W.D.N.Y. July 26, 2016) "[E]ven if Plaintiffs were to obtain a greater judgment, it is not likely that Defendants financial condition would permit them to collect on it. The proposed settlement is funded with a structured payment schedule which will more likely guarantee payment to Plaintiffs. This factor weighs in favor of approval of the proposed settlement.").

## Work Performed by Plaintiff's Counsel

While the case settled prior to discovery, Plaintiff's counsel performed critical work. Plaintiff's counsel met with Plaintiff and diligently researched the corporate Defendants' business, as well as the overall strength of Plaintiff's claims. Plaintiff's counsel also drafted damages spreadsheets setting forth the avenues of potential recovery, and examined documents provided by Plaintiff. Finally, Plaintiff's counsel also prepared materials regarding Plaintiff's motion for conditional certification.

## Attorneys' Fees and Counsel's Qualifications

Plaintiff's retainer agreement with the undersigned counsel provides for a contingency fee of one-third of any settlement reached, exclusive of costs and disbursements. Here, as noted above, Plaintiff's counsel seeks the amount of 30.26%, inclusive of their expenses. Courts regularly approve attorneys' fees of one-third of the settlement amount in non-class FLSA cases. *See Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037 at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases); *see also* p. 2,

*supra* (citing cases). Thus, Plaintiff's counsel is seeking less attorney fees then they are arguably entitled.

Jacob Aronauer is the managing partner of The Law Offices of Jacob Aronauer. Mr. Aronauer has been practicing law since 2005 and started his own firm in 2013. Since he started his own law firm, Mr. Aronauer's practice has primarily focused on wage and hour law. Mr. Aronauer has handled close to 100 wage and hour matters. In 2018, Mr. Aronauer was voted a "Rising Star" in the New York area by Super Lawyers. Mr. Aronauer's hourly rate is $350 an hour. This hourly rate is what Mr. Aronauer charges his management-side clients. Paralegals in this case employed by Mr. Aronauer's firm charged $150 per hour.[1]

Vincent Bauer is the principal attorney at The Law Offices of Vincent Bauer. Mr. Bauer has over 20 years of experience specializing in employment law in New York. Many of these years included working at Morgan Lewis, where Mr. Bauer primarily practiced employment law. Mr. Bauer was named a Super Lawyer in 2011 and again from 2013-2018. Mr. Bauer's hourly rate is $450 per hour.

## Conclusion

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve *bona fide* disputes." *Johnson v. Brennan*, No. 10-cv-00471, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679, F.2d 1350, 1353 n. 8 (11th Cir. 1982)).

Given the conflicting evidence, the quality of the evidence and counsel and the allocation of the burden of proof on Plaintiff, the settlement represents a reasonable compromise with respect to contested issues. The parties jointly request the settlement agreement's approval. *See Reyes v. Altamarea Grp., LLC*, 10-cv-6451, 2011 WL 4599822, at *6 (S.D.N.Y. Aug. 16, 2011) (approving settlement agreement where it "resolves a clear and actual dispute under circumstances supporting a finding that is fair and reasonable.").

Respectfully submitted,

Jacob Aronauer
*Attorney for Plaintiff*

cc: **Via ECF**
    *All attorneys on record*

---

[1] Plaintiff's counsel will provide time records and expenses *ex parte* for in camera review at the Court's request, if considered necessary.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ALBERTO TAPIA,

                              Plaintiff,                        18-cv-02864-KMK

       -against-

                                                          **SETTLEMENT**
MOUNT KISCO BAGEL                                       **AGREEMENT**
COMPANY, d/b/a MOUNT
KISCO BAGEL, and JAMES
FLEMING, individually,

                              Defendants.
-----------------------------------------------------------------x

       **WHEREAS,** Plaintiff Alberto Tapia (hereinafter "Tapia" or "Plaintiff") has initiated this action against Defendants Mount Kisco Bagel Company (hereinafter "Mount Kisco Bagel") and James Fleming ("Fleming," together with Mount Kisco Bagel, "Defendants") captioned *Tapia v. Mount Kisco Bagel Co. et al.*, Case No. 18-cv-02864-KMK (the "Action"), asserting claims under the Fair Labor Standards Act and New York State Labor Law for, inter alia, unpaid wages and alleging, inter alia, violations of overtime laws during the time Plaintiff was employed as a baker at Mount Kisco Bagel;

       **WHEREAS,** the Defendants have denied the allegations made against them in this Action and deny any and all liability;

       **WHEREAS,** Plaintiff and Defendants have determined that it is in their mutual interests to settle all claims between them in order to avoid the expense, burden, distraction and uncertainty of further litigation; and

**WHEREAS,** Plaintiff and Defendants have agreed to settle all matters between them regarding the claims described above pursuant to the terms of this Settlement Agreement (hereinafter the "Settlement Agreement"),

**NOW, THEREFORE**, in consideration of the promises and mutual covenants set forth in this Settlement Agreement, the sufficiency of which is hereby acknowledged, Tapia and the Defendants hereby agree as follows:

1.    **Payment Terms.** Defendants shall pay the sum of Sixty Five Thousand Dollars and Zero Cents ($65,000.00) as follows:

    a)  Plaintiff and Plaintiff's counsel shall receive an initial payment totaling $10,000.00, payable by checks, to be apportioned as follows: Plaintiff shall receive an initial payment of $6,974.36 in a check made payable to "Alberto Tapia"; the Law Offices of Vincent Bauer shall receive an initial payment of $1,512.82 in a check made payable to "Law Offices of Vincent Bauer"; and the Law Offices of Jacob Aronauer shall receive an initial payment of $1,512.82 in a check made payable to "Law Offices of Jacob Aronauer."

    b)  Plaintiff and Plaintiff's counsel shall receive twenty-two (22) subsequent monthly payments of $2,500.00 per month, payable by checks, to be apportioned as follows: Plaintiff shall receive $1,743.58 per month in a check made payable to "Alberto Tapia"; the Law Offices of Vincent Bauer shall receive $378.21 per month in a check made payable to "Law Offices of Vincent Bauer"; and the Law Offices of Jacob Aronauer shall receive $378.21 per month in a check made payable to "Law Offices of Jacob Aronauer."

    c)  Plaintiff (and Plaintiff's counsel) will be paid via 1099 and the Defendants will not make any tax withholdings on payments to Plaintiff or Plaintiff's counsel.

    d)  The initial payment identified in paragraph 1(a) shall be made no later than the 15th day of the month that the Settlement Agreement becomes "Effective" in accordance with paragraph 18 herein; notwithstanding the foregoing, however, if the Settlement Agreement is "Effective" on or between the 14th day and 31st day of a month, then the initial payment shall be made no later than the 15th day of the next month after the month that the Settlement Agreement is "Effective" in accordance with paragraph 18 herein.

e) All of the subsequent payments identified in paragraph 1(b) shall be made by the 15th day of each month, and shall commence on the 15th day of the next month after the initial payment identified in paragraph 1(a) is made.

f) Defendants shall send all payments to Law Offices of Jacob Aronauer, 225 Broadway, 3rd Floor, New York, NY 10007.

g) A payment is considered "made" if it is in an envelope postmarked by the 15th day of a month.

2. **Penalty for Late Payment and Default.**    In the event of a failure to make any payment as provided for in paragraph 1 above, Plaintiff's attorneys shall give notice via email to Defendants' attorneys, Kasowitz, Benson Torres, LLP, 1633 Broadway, New York, NY 10019, of said default. E-mail sent to Jessica Taub Rosenberg at jrosenberg@kasowitz.com constitutes sufficient notice. The Defendants shall thereafter have ten (10) days from the receipt of said written notice to cure said default. In the event that the Defendants do not cure said default by that time, Plaintiff's attorneys shall be entitled to enter a judgment by Affidavit of Confession of Judgment, annexed hereto as Exhibit B, without further notice to the Defendants in the United States District Court, Southern District of New York, for two times the full Settlement Sum ($130,000), less any partial payment(s) made, and shall have immediate execution thereon. Plaintiff's counsel will also be entitled to recover reasonable attorneys' fees to enforce any such judgment. The Defendants will provide Plaintiff's counsel with the original signed Affidavit of Confession of Judgment in the form annexed hereto as Exhibit B. Plaintiff's counsel will hold the original and any copies thereof in escrow pending either (a) a default in the payment provisions of this Settlement Agreement and the expiration of ten days from the date of written notice thereof, or (b) the receipt of final payment due under the terms of this Settlement Agreement, at which time Plaintiff's counsel shall destroy the original and any copies of the

Confession of Judgment, and, within ten (10) days of receipt of final payment, shall forward an affirmation to the Defendants' attorney stating that the Defendants have fully satisfied the conditions of the Settlement Agreement and that the original Confession of Judgment and any copies thereof have been destroyed.

      **3.**      **Dismissal of the Action.**   Within 3 days of the Effective Date, Plaintiff's attorneys shall file a fully-executed stipulation discontinuing this Action with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, which shall expressly provide that the Court shall retain jurisdiction over this matter solely for purposes of enforcement of this Settlement Agreement. A copy of this stipulation is annexed hereto as Exhibit A to the Settlement Agreement.

      **4.**      **Wage & Hour Release By Plaintiff.**  Plaintiff, with respect solely and only to conduct that has arisen on or prior to the date this Settlement Agreement is executed, fully and forever releases, relieves, waives, relinquishes, and discharges Defendants from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands concerning wage and hour matters including any and all claims arising under the Fair Labor Standards Act, the New York Labor Law, and the Wage Theft Prevention Act, as well as claims for minimum wages, commissions, unpaid wages, whether based on common law or otherwise. This release shall not affect or limit: (a) any non-wage and hour related claims, (b) claims that may arise after the date Plaintiff signs this Settlement Agreement, or (c) Plaintiff's right to enforce the terms of this Settlement Agreement.

5.    **No Outstanding or Known Future Claims/Causes of Action.**  Plaintiff affirms that it has not filed with any governmental agency or court any type of action or report against the Defendants, except for the Action, and currently knows of no existing act or omission by the Defendants that may constitute a claim or liability excluded from the release in paragraph 4.

6.    **No Admissions.**  It is hereby understood that the payments called for in this Settlement Agreement and the Settlement Agreement itself are not an admission by Defendants of liability or responsibility for any of the claims referenced in this Settlement Agreement, which liability and responsibility are hereby expressly denied, but are made for purposes of avoiding the costs and/or risks of litigation.

7.    **Non-Voluntary Disclosure of Settlement.**  Plaintiff and Plaintiff's counsel agree that they shall not: (i) initiate conversations about the settlement of this Action or the Settlement Agreement; (iii) disclose the settlement of this Action or the terms of the Settlement Agreement on any website or social media (e.g., Facebook, Twitter, etc.); and (iii) disclose the settlement of this Action or the terms of this Settlement Agreement through the form of mass e-mail distribution.  Plaintiff and Plaintiff's counsel, though, are not prohibited from discussing the settlement or answering questions about the settlement provided they do not initiate disclosing the terms of the settlement.  In other words, Plaintiff may answer questions as it relates to his employment at Mount Kisco Bagel and the terms of the settlement. Plaintiff's counsel may answer questions as it relates to this Action and the terms of the settlement.

8.    **Attorneys' Fees.**  Except as otherwise stated in paragraph 1, the parties agree to bear their own attorneys' fees, costs and disbursements incurred in this Action.  Except to the extent provided for in this Settlement Agreement, no party shall be responsible or liable for payment of any attorneys' fees for the other party, unless one of the parties is required to

judicially enforce any term of this Settlement Agreement, in which case the prevailing party shall be entitled to reasonable attorneys' fees to be paid by the opposite party.

      **9.**      **Tax Responsibilities.**  Plaintiff shall be solely responsible for the payment of any taxes owed on the payments made under this Settlement Agreement.  Plaintiff represents that no tax advice has been given to him by the Defendants or their representatives and understands that the Defendants make no representation or guarantee as to the tax consequences of the payments made under this Settlement Agreement.  Plaintiff hereby agrees to indemnify and/or hold harmless Defendants in connection with any tax liabilities and/or interest, penalties or costs that may be incurred by Plaintiff for failure to properly report the payments made under the Settlement Agreement.

      **10.**      **Careful Review of Settlement Agreement.**  Plaintiff and the Defendants represent that each has carefully read this Settlement Agreement, and understands its terms and conditions without reservation.  Plaintiff and the Defendants acknowledge that each has had ample opportunity to consult with legal counsel of their choice regarding this Settlement Agreement and has not relied on any representations or statements of the other party or the other party's counsel with respect to the subject matter of this Settlement Agreement.

      **11.**      **Severability.**  If any portion or portions of this Settlement Agreement may be held by a court of competent jurisdiction to conflict with any federal, state or local law, and as a result such portion or portions are declared to be invalid and of no force or effect in such jurisdiction, all remaining provisions of this Settlement Agreement shall otherwise remain in full force and effect and be construed as if such invalid portion or portions had not been included herein.

12. **Counterparts.**    This Settlement Agreement may be signed in several counterparts, but all when taken together shall constitute but a single document when executed by all parties to this Settlement Agreement. This Settlement Agreement shall not constitute the agreement of the parties until such time as it has been executed by all parties. A fax or emailed signature shall be deemed an original.

13. **Entire Agreement.**    This Settlement Agreement constitutes the full and complete agreement between the parties and fully supersedes any and all prior agreements, commitments or understandings between the parties pertaining to the subject matter hereof.

14. **Binding Effect.**    This Settlement Agreement shall be binding upon and shall inure to the benefit of the parties, their respective heirs, beneficiaries, personal representatives, successors, and assigns.

15. **Amendments.**    This Settlement Agreement and all documents and instruments executed in connection herewith or in furtherance hereof may not be amended, modified or supplemented except by an instrument in writing signed by all parties hereto.

16. **Governing Law.**    This Settlement Agreement shall be governed by the laws of the State of New York.

17. **Jurisdiction**. By entering into the Settlement Agreement, the parties hereby submit to the jurisdiction of the Southern District of New York, United States District Court to resolve any dispute hereunder.

18. **Execution and Effective Date**. The parties and their counsel agree that they shall execute the Settlement Agreement and exhibits thereto within 3 days of receiving the Court's approval of the Settlement Agreement. The Settlement Agreement shall be "Effective" on the last day on which it is signed by all parties (which day is deemed the "Effective Date").

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, the parties hereto have read the foregoing Settlement Agreement, accept and agree to the provisions contained herein, and have executed this Settlement Agreement on the dates written below.

_____
**Alberto Tapia**

STATE OF NEW YORK          )
                                     )    ss.
COUNTY OF                   )

Before me, personally appeared the above-named Alberto Tapia, who made oath that the execution of this document is his own free act and deed this _____ day of _____, 2018.

_____
Notary Public

**Mount Kisco Bagel Company**
By:    James Fleming

STATE OF NEW YORK         )
                            )    ss.
COUNTY OF               )

Before me, personally appeared the above-named James Fleming, who made oath that the execution of this document is his own free act and deed this _____ day of _____, 2018.

_____
Notary Public

**James Fleming**

STATE OF NEW YORK         )
                            )    ss.
COUNTY OF               )

Before me, personally appeared the above-named James Fleming, who made oath that the execution of this document is his own free act and deed this _____ day of _____, 2018.

_____
Notary Public

10

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALBERTO TAPIA,

                                        Plaintiff,                **18-cv-02864-KMK**

        -against-                                STIPULATION OF
                                                    ORDER AND
MOUNT KISCO BAGEL COMPANY,                DISMISSAL
d/b/a MOUNT KISCO BAGEL, and
JAMES FLEMING, individually,

                                    Defendants.

-----------------------------------------------------------------------X

IT IS HEREBY STIPULATED AND AGREED, by and between the parties in the above captioned action, through the undersigned counsel, that:

1. This action is hereby withdrawn, discontinued and dismissed, in its entirety with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.

2. The United States District Court for the Southern District of New York shall retain jurisdiction over all proceedings solely to enforce the terms of the settlement reached between the parties in this action.

12

_____
Dated

_____
Jacob Aronauer, Esq.
THE LAW OFFICES OF JACOB ARONAUER
225 Broadway, 3rd Floor
New York, NY 10007
*Attorney for Plaintiff Alberto Tapia*

_____
Dated

_____
Jessica Taub Rosenberg
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019
*Attorney for Defendants Mount Kisco Bagel
Company and James Fleming*

SO ORDERED

_____
Honorable Kenneth M. Karas

13

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

ALBERTO TAPIA,

                                              Plaintiff,          **18-cv-02864-KMK**

          -against-                                               AFFIDAVIT OF
                                                                  CONFESSION OF
MOUNT KISCO BAGEL COMPANY,                                        JUDGMENT
d/b/a MOUNT KISCO BAGEL, and
JAMES FLEMING, individually,

                                              Defendants.

---------------------------------------------------------------------X

STATE OF NEW YORK       )
                        ): ss:
COUNTY OF NEW YORK      )

JAMES FLEMING, being duly sworn, deposes and says:

1. I am a Defendant in the above-entitled action captioned *Tapia v. Mount Kisco Bagel Co. et al.*, Case No. 18-cv-02864-KMK (the "Action").

2. I currently reside in Westchester County New York.

3. I, on behalf of myself as an individual defendant in the Action and on behalf of Defendant Mount Kisco Bagel Company ("Mount Kisco Bagel"), hereby confess judgment in this Court in favor of Plaintiff Alberto Tapia in an amount of One Hundred and Thirty Thousand Dollars and Zero Cents ($130,000.00) minus the amount of partial payment(s) made by Defendants Mount Kisco Bagel and myself in accordance with the Settlement Agreement entered into between these parties in the Action, and hereby authorize Plaintiff to enter judgment for that sum against Mount Kisco Bagel or myself, as an individual.

4. This Confession of Judgment is for a debt justly due to Plaintiff pursuant to the Settlement Agreement.

5. The Settlement Agreement arises out of the Action, which was settled pursuant to a written agreement approved by the United States District Court, Southern District of New York.

6. In accordance with paragraph 2 of the Settlement Agreement, Plaintiff shall have the unqualified right to cause this Confession of Judgment to be docketed and entered in this Court as a judgment against Mount Kisco Bagel and myself, jointly and severally, against all property, of any kind, that we have, collectively or individually, have any ownership interest.

7. The original of this Affidavit of Confession of Judgment shall remain in the possession of Plaintiff's counsel, The Law Offices of Jacob Aronauer, and the original shall be destroyed upon completion of the payment obligations contained in the Settlement Agreement entered into between the parties. Within ten (10) days of receiving the final payment under the Settlement Agreement, Plaintiff's attorney will send an affirmation to the attorney of Mount Kisco Bagel and myself, stating that we have fully satisfied the conditions of Settlement Agreement and that the original Confession of Judgment and any copies thereof have been destroyed.

_____
JAMES FLEMING, individually
and on behalf of Mount Kisco Bagel

Dated:_____

Sworn to before me this
    day of _____, 2018

_____
Notary Public

16